IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**


STATE V. WELLON


NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).


STATE OF NEBRASKA, APPELLEE,

V.

DARRYL T. WELLON, APPELLANT.


Filed November 21, 2017.    Nos. A-17-283, A-17-284.


Appeals from the District Court for Douglas County: DUANE C. DOUGHERTY, Judge. Judgment in No. A-17-283 affirmed. Judgment in No. A-17-284 affirmed as modified.

Gregory A. Pivovar for appellant.

Douglas J. Peterson, Attorney General, and Austin N. Relph for appellee.


MOORE, Chief Judge, and BISHOP and ARTERBURN, Judges.

BISHOP, Judge.

This case involves two appeals from the Douglas County District Court, which have been consolidated for briefing and disposition. In case No. A-17-283, Darryl T. Wellon pled no contest to possession of a deadly weapon by a prohibited person, a Class ID felony, and the court sentenced him to 45 to 50 years' imprisonment. In case No. A-17-284, Wellon pled no contest to manslaughter, a Class III felony, and the court sentenced him to 19 to 20 years' imprisonment.

In both cases, Wellon argues the district court imposed an excessive sentence. The State contends the sentences were not excessive, but the court did commit plain error in its crediting for time served. We affirm the sentencing order in case No. A-17-283. However, we modify the sentencing order in case No. A-17-284.

BACKGROUND

*Case No. A-17-283.*

On November 3, 2015, the State filed an information charging Wellon with one count of possession of a deadly weapon by a prohibited person, a Class ID felony, pursuant to Neb. Rev. Stat. § 28-1206(1)(a) and (3)(b) (Reissue 2016). The offense was alleged to have occurred on October 13. This was after the August 30, 2015, effective date of 2015 Neb. Laws, L.B. 605, which changed the classification of certain crimes and made certain amendments to Nebraska's sentencing laws.

*Case No. A-17-284.*

On March 1, 2016, the State filed an information charging Wellon with three counts: (1) first degree murder, a Class IA felony, pursuant to Neb. Rev. Stat. § 28-303(1) (Reissue 2008); (2) use of a deadly weapon (firearm) to commit a felony, a Class IC felony, pursuant to Neb. Rev. Stat. § 28-1205(1)(a) and (1)(c) (Reissue 2016); and (3) possession of a deadly weapon by a prohibited person, a Class ID felony, pursuant to § 28-1206(1)(a) and (3)(b). The offenses were alleged to have occurred on February 24, 2015. Therefore, they would have occurred before the August 30, 2015, effective date of L.B. 605.

*Plea Hearing.*

A plea hearing for both cases was held on December 16, 2016. Pursuant to a plea agreement, the State filed an amended information in case No. A-17-284, charging Wellon with one count of manslaughter, a Class III felony, pursuant to Neb. Rev. Stat. § 28-305(1) (Reissue 2008). Wellon pled "no contest" to possession of a deadly weapon by a prohibited person (case No. A-17-283, post-LB 605), and manslaughter (case No. A-17-284, pre-LB 605). According to the factual basis provided by the State,

> [i]n [case No. A-17-283], that is the charge for felon in possession of a firearm, the State would be able to prove . . . that on or about October 13th of 2015 -- prior to that date law enforcement had received information from a confidential informant that [Wellon] was selling illegal narcotics in Omaha, Nebraska. Based on that information, they . . . set up a controlled buy where [Wellon] did sell an illegal substance . . . to the controlled [sic] informant from a vehicle. Based on that information, they [got] a search warrant for his residence . . . they [executed] the search warrant. They located [Wellon] at the home . . . Also, in the driveway they [found] . . . the same vehicle that he had used during the controlled buy . . . In that vehicle they [found] a loaded .22-caliber firearm. On that date in October, [Wellon] was a convicted felon.

The State also offered exhibit 1 into evidence, and it was received without objection. Exhibit 1 contains court records showing Wellon was convicted of a felony in 2005.

> And with regard to [case No. A-17-284], the State would be able to prove that on March 6th of 2015, law enforcement was called out to a residence located in Douglas County, Nebraska . . . Law enforcement was advised that friends of a potential victim had gone to the residence because they were concerned that they had not heard from their friend

and/or family member, Elston McArthur. When they arrived at the residence, all of the entryways to the house and windows were closed and locked. So . . . they [had] to break into the residence. . . . Friends immediately noticed that [McArthur] was laying on the floor of his home with what appeared to be multiple gun wounds to him. He was not alive at the time friends and family found him and also when law enforcement arrived at the scene.

. . . [L]aw enforcement started an investigation . . . . Based on interviews of friends and family, they advised law enforcement that . . . Shaunte Kitchen Wellon had been living in the home for several months. . . . McArthur . . . had let her move into the home to help her out. Eventually, her boyfriend/husband, this defendant, Darryl Wellon, moved into the home as well. That caused some tension in the residence and, eventually, [McArthur] advised them that they needed to leave the residence . . . .

That leads us to . . . February 24th, 2015. If we would go to trial, we would be able to show that that is the date that, in fact, [McArthur] . . . was murdered by [Wellon] and his co-defendant [Michael Walker]. On that date . . . Shaunte and him were leaving the residence. They were going to move out pursuant to what . . . McArthur had told them. During that move there was a [verbal altercation] between [Wellon] and . . . McArthur over Shaunte. . . . Shaunte left the residence . . . and sat in the car . . . .

For several minutes [Wellon] and . . . Walker were out of the [sic] eyesight, and Shaunte . . . believed that he was in the residence at the time. Eventually . . . Walker and [Wellon] came out of the residence and back into the vehicle and drove to the new apartment where . . . Shaunte and [Wellon] would be staying at.

When they arrived at the residence, Shaunte inquired as to what happened to [McArthur]. . . . [Wellon] made statements to her that [McArthur] was no longer alive. She didn't believe him, so she called [McArthur's] cell phone . . . . [McArthur] never picked up his phone [that time or ever again]. . . . His boss [would] testify that after that date, [McArthur] never came into work, and friends and family never spoke with him after that date as well.

The investigation continued and eventually Shaunte . . . was interviewed. She testified further in addition to the statements made by [Wellon] that [McArthur] was no longer alive. She also went with him to attempt to and successfully dispose of a revolver that she had seen on his person multiple times. . . .

. . . That would be consistent with the ballistics report, which would show that [McArthur] did have several gunshot wounds to his body. The slugs and casings were tested by Omaha Police Department, and they believe that there was one shot fired from . . . a revolver . . . .

Further investigation showed that law enforcement contacted and spoke to an individual, Mr. Jones. . . . Jones would testify that he knew and had been previously friends with . . . Walker and [Wellon]. They had tried to sell him a gun. They said that there was a body on the gun. When he inquired further, there were comments made by [Wellon] that he had taken out [McArthur], that he had done so because [McArthur] disrespected his girlfriend/wife . . . . Autopsy reports would show that, in fact, [McArthur] did die from gunshot wounds that he did suffer on February 24th of 2015 . . . . All of those events did take place in Douglas County, Nebraska.

The district court accepted Wellon's no contest pleas to possession of a deadly weapon by a prohibited person (case No. A-17-283), and manslaughter (case No. A-17-284), and found him guilty of the same.

The sentencing hearing for both cases was held on February 14, 2017. In case No. A-17-283, possession of a deadly weapon by a prohibited person, the district court sentenced Wellon to imprisonment for a period of 45 to 50 years, with 491 days' credit for time served. In case No. A-17-284, manslaughter, the district court sentenced Wellon to imprisonment for a period of 19 to 20 years, with 397 days' credit for time served. The sentences were ordered to run consecutively. Orders memorializing the court's sentences were filed that same day. Wellon now appeals.

### ASSIGNMENT OF ERROR

Wellon assigns the district court erred by imposing excessive sentences.

### STANDARD OF REVIEW

An appellate court will not disturb a sentence imposed within the statutory limits absent an abuse of discretion by the trial court. *State v. Abejide*, 293 Neb. 687, 879 N.W.2d 684 (2016).

### ANALYSIS

Wellon asserts the district court imposed excessive sentences, claiming the court took into account the original charges in case No. A-17-284, and "[made] it up on the other end" by imposing such a severe sentence in case No. A-17-283. Brief for appellant at 9. Wellon "expected" the "nearly max[imum]" sentence in case No. A-17-284 (manslaughter) because of "the nature of the initial charges and the plea bargain that was ultimately reached." *Id*. at 11.

> However, by taking the Possession of a Weapon by a Prohibited Person and taking the minimum three year sentence and making it a 45 to 50 year sentence, the sentencing judge made up for what the State could not prove on the Manslaughter case . . . . Forty five to 50 years on [case No. A-17-283] is clearly excessive and not related to that charge.

*Id*. He also points to a statement made by the probation officer regarding an action by Wellon (flicking his tooth with his thumbnail) when asked about his history of gang activity. This was perceived by the probation officer as a sign of disrespect and disdain toward the probation officer. Wellon argues this "very subjective observation" by the probation officer "appears to flavor the entire presentence investigation." *Id.* at 10.

The State contends the sentences were not excessive, but suggests the court did commit plain error in its crediting for time served.

Factors a judge should consider in imposing a sentence include the defendant's age, mentality, education, experience, and social and cultural background, as well as his or her past criminal record or law-abiding conduct, motivation for the offense, nature of the offense, and the amount of violence involved in the commission of the crime. *State v. Dixon*, 286 Neb. 334, 837 N.W.2d 496 (2013).

Wellon was 29 years old at the time of sentencing. He was married in 2016 while confined in Douglas County Corrections. He has one child. Wellon had a GED and during the presentence

investigation (PSI), told the probation officer he completed classes at Metropolitan Community College and had plans to continue his education in the field of Information Technology. He was unemployed due to his confinement, but previously worked in roofing, construction, and telemarketing. According to the PSI, Wellon "reported (with apparent pride) that his greatest source of income to date has been selling crack cocaine" and advised that in his lifetime, "he estimates that he has netted more than $1,000,000 in cash by selling drugs." Wellon reported that McArthur (the victim in case No. A-17-284) was one of his "customers."

Wellon's record goes back to 1999, when he was a juvenile. His adult record contains convictions for possession of crack cocaine, possession of cocaine base with intent to distribute, use of a firearm during drug trafficking, domestic abuse assault, second degree criminal trespass (amended from felony burglary), "shoplifting theft unlawful taking," failure to appear (3 times), false information (3 times), and disorderly conduct. He was previously sentenced to probation in 2005 and 2007 and had his probation revoked both times. Wellon has also served time in federal prison. Regarding his current convictions, he was found to be in possession of a firearm even though he was a prohibited person (A-17-283), and was involved in the shooting death of McArthur (A-17-284).

As part of the PSI for his current convictions, the probation officer conducted a level of service/case management index. Wellon was assessed in the "very high" risk range to reoffend. The PSI notes that Wellon has incurred "lock downs" in jail and in Federal penitentiaries because of his behaviors, including, but not limited to, fighting, assault of inmates (with weapon), gang behavior and involvement, verbal abuse, threatening an officer, and failure to comply. The probation officer recommended "extensive periods" of incarceration for each charge, to run consecutively.

At the sentencing hearing, Wellon's counsel argued the PSI shows Wellon did not have the best childhood, suffers from some mental illnesses (stress, anxiety, depression), and has been addicted to drugs for 7 years. Counsel asked the court to either run the sentences concurrent or give a sentence "that allows him to be rehabilitated in prison and then to get out" because "[h]e's only 29 years old" and "[h]e's still got a long life to live." Wellon's goals are to "get out of the Omaha area . . . where a lot of bad things have happened, move to Chicago [where his family is] . . . and, certainly, to stop using drugs."

The State responded by pointing out that McArthur was no longer allowed to live his life and was "taken far too soon and far too tragically from his loved ones." The State also noted Wellon's criminal history had a "theme of just violence, drugs and guns."

The district court said it read the PSI and considered all of the relevant sentencing factors. The court specifically stated it considered the seriousness of the crimes and "I don't think we can get much more serious than these crimes. A man has died and lost his life[.]" Additionally, Wellon's record "always seems to involve a strong history or connection with firearms." Furthermore, Wellon's involvement in these crimes took place not long after he was released from federal prison (after having served additional time for having his probation revoked). The court said it was concerned for the safety and protection of the public. The court then pronounced the sentences. In case No. A-17-283, possession of a deadly weapon by a prohibited person, the district court sentenced Wellon to imprisonment for a period of 45 to 50 years, with 491 days' credit for time served. In case No. A-17-284, manslaughter, the district court sentenced Wellon to

imprisonment for a period of 19 to 20 years, with 397 days' credit for time served. The sentences in both cases were ordered to run consecutively.

Wellon's offense in A-17-283, possession of a deadly weapon by a prohibited person, is a class ID felony. That offense occurred after L.B. 605 and was punishable by a mandatory minimum of 3 years and a maximum of 50 years' imprisonment. See Neb. Rev. Stat. § 28-105 (Reissue 2016). Wellon's offense in A-17-284, manslaughter, is a class III felony. That offense occurred before L.B. 605 and was punishable by 1 to 20 years' imprisonment, a $25,000 fine, or both a fine and imprisonment. See § 28-105 (Cum. Supp. 2014). Despite Wellon's claims to the contrary, there is no evidence in the record that the court took into account the original charges in case No. A-17-284, and "[made] it up on the other end" by imposing such a severe sentence in case No. A-17-283. Brief for appellant at 9. While it may seem unusual that Wellon's sentence for manslaughter (a death) is substantially less than his sentence for possession of a deadly weapon by a prohibited person (which arose from a controlled drug buy), the classifications and sentencing ranges for these felonies have been established by the Legislature. The sentences in both cases are within the statutory ranges for their respective classifications. And although the sentences in both cases are on the high-end of the sentencing range, after considering the relevant factors in this case, as discussed above, we find Wellon's sentences were not excessive or an abuse of discretion.

However, as the State correctly points out, the district court did commit plain error in its crediting of time served. The court gave Wellon credit for 491 days' time served in case No. A-17-283, and 397 days' credit for time served in case No. A-17-284. And the sentences in both cases were ordered to run consecutively. The record reflects that Wellon was in custody for only 491 days total (397 of those on both charges) before beginning to serve his sentence. (The PSI states that in case No. A-17-283 he was in jail from October 13, 2015, to February 14, 2017; a total of 491 days. And in case No. A-17-284 he was in jail from January 15, 2016, to February 14, 2017; a total of 397 days.) Presentence credit is to be applied only once, and an offender who receives consecutive sentences is entitled to credit against only the first sentence imposed. See, Neb. Rev. Stat. § 83-1,106 (Reissue 2014); *State v. Williams*, 282 Neb. 182, 802 N.W.2d 421 (2011) (under § 83-1,106, an offender who receives consecutive sentences is entitled to credit against only the first sentence imposed); *State v. Banes*, 268 Neb. 805, 688 N.W.2d 594 (2004) (under § 83-1,106, an offender shall be given credit for time served as a result of the charges that led to the sentences; however, presentence credit is applied only once). Therefore, as requested by the State, we find the 491-day credit should apply against only the sentence imposed in case No. A-17-283. According, we affirm the sentencing order in case No. A-17-283. But we modify the sentencing order in case No. A-17-284 to strike the 397-day credit granted against the sentence in that case.

CONCLUSION

For the reasons stated above, we affirm the sentencing order in case No. A-17-283. However, we modify the sentencing order in case No. A-17-284 to strike the 397-day credit granted against the sentence in that case.

JUDGMENT IN NO. A-17-283 AFFIRMED.
JUDGMENT IN NO. A-17-284 AFFIRMED AS MODIFIED.